Mr. Justice Smith
delivered the opinion of the court.
Wiley Marcum and Marshall, as it was alleged, being indebted to J. G. W. Mallett for rent, an attachment at his instance was sued out and levied, Feb. 22, 1847, on a female slave, as the property of said Marcum. Dobbs, who is defendant in error, was the officer who levied the distress, and look the slave into his possession. Prewett, the plaintiff, claimed title to the property attached, and brought an action of replevin in the circuit court of Monroe, where, upon trial, verdict and judgment were rendered for the defendant.
After the evidence was closed, the jury was charged on points involved in the contest, at the instance of both plaintiff and defendant. The instructions given at the request of the defendant present some of the questions which we are required to decide.
Upon the return of the verdict, the plaintiff moved for a new trial, and the motion being overruled, he tendered his bill of exceptions to the judgment on the motion. The evidence adduced on the trial is contained in the bill.
From this evidence, it appears that Prewett claimed the slave in controversy by virtue of an instrument in writing, which upon its face purports to be an absolute bill of sale. The consideration stated is $350, which is stated in the bill of sale to have been received by the vendor. The bill of sale was made in the state of Alabama, by Wiley Marcum, to plaintiff, and bears date the 17th of Feb. 1845. Its execution and delivery is proved by Skelton the subscribing witness, who also proved that Prewett, at the time of the execution of the bill of sale, paid Marcum $150 in cash, and gave to him his note for $200 more, payable on the 17th of Feb. 1847. Skelton further proves that, at the time of this transaction, there was no other contract in writing entered into by the parties, but that it was verbally understood between them that if Marcum should repay the purchase-money, *439 $350, at or before the maturity of the note made by Prewett to him, and should pay him for the girl at the rate of $37.50 per annum, the contract of sale was to be rescinded. Marcum was to retain possession of the slave.
It was likewise in proof that Marcum held a writing, executed by Prewett, bearing date the 18th of Feb. 1845, by which Prewett in effect covenanted to make to Marcum a good and sufficient title to the said slave, upon condition that Marcum should payjhim $350, at or before the 17th of Feb. 1847; that this girl,; at the date of the alleged sale, was worth $550 ; that her hire was worth $85 per annum, and that she was brought into this state in the early part of the year 1846. There was no proof of the registration of the^bill of sale, or of the agreement to reconvey, in Alabama or Mississippi, nor was there, any evidence introduced to show what was the law of the state of Alabama, in regard to the registration of instruments of that character. *No objection was made by either party to the introduction of any evidence contained in the record.
Upon this evidence the court charged the jury for the defendant, that if they were satisfied from the evidence that the plaintiff held only a mortgage on the negro girl in controversy, they should find for the defendant. This instruction constitutes' the chief ground of objection to the ruling of the court. It is evident the .case was made to turn upon the question, whether the transfer of the negro girl to the plaintiff was an absolute sale, or a conveyance in the nature of a mortgage. The remaining instructions given for defendant were intended to explain to the jury what is meant by a mortgage, and to enable them, by an application of the evidence, to ascertain whether the conveyance before them was or was not a mortgage. They propound the law correctly.
If the sale of the slave was absolute and unconditional, the verdict was erroneous upon the law and the facts. But it is insisted that the conveyance was in fact a mortgage, and as it had not been recorded where executed nor in this state, it was inoperative as to the rights of the attaching creditor, who occupied the attitude of a subsequent bond fide creditor without notice.
*440 Did the conveyance, under the circumstances, constitute a mortgage ?
The clear and certain intention of the parties to a conveyance, must determine its character. Hence a deed absolute on the face 'of it, will be held to be valid and effectual as a mortgage, if it clearly appear that it was designed by the parties thereto to operate as a security for the repayment of money. And such intention may be shown by an agreement in the deed, or in a separate instrument contemporaneously or subsequently executed, or by an agreement resting in parol. 4 Kent’s Com. 141, 142; Clark v. Henry, 2 Cow. R. 324; 12 S. & M. 306.
There is no ground to doubt that the parties to the transaction under examination, intended the conveyance of the slave as a security for the money advanced by the plaintiff, and not as an absolute sale, independent of the written agreement of the'plaintiff, dated the day after the bill of sale, by which he covenanted’ to reconvey upon the repayment of the purchase-money. The parol agreement of the parties that Marcum should retain possession, that he should pay hire at a rate less than one half of its value, and that the bill of sale should be rescinded upon payment of the purchase-money by Marcum, on or before the day on which the note given by the plaintiff to him should fall due, clearly indicates such intention.
The conveyance from Marcum to plaintiff was a mortgage. The rights and obligations incident to the relation of mortgagor and mortgagee attached to the parties. The conveyance was executed in Alabama,and transferred property then located there; but we are not informed by the proofs in the cause, whether, by the laws of that state, a registration of instruments of this character is necessary, in order to protect the rights of the mortgagee against the claims of creditors or purchasers without notice. The fact then that the instrument, under which the plaintiff claims title, was not recorded in the state of Alabama; can have no effect on his rights in this controversy. But it is urged that the bill of sale being a mortgage is a nullity ; that the rights of the plaintiff acquired by virtue of the mortgage, so far as they are involved in the present suit, have been lost by his failure to *441 have the instrument under which he claims recorded in the county of Monroe, where the property remained in possession of the mortgagor.
Mortgages and deeds of trust take effect, and are valid as to all persons from the date of their delivery to the registrar of deeds. Hutch. Dig. 606, § 5. If the instrument had been executed within this state, or had been made for the conveyance of property located here at the date of its execution, and which bad remained in the state down to the time when the rights of Mallett attached, no question could arise. But a question not altogether free from difficulty is presented when this statute is made to apply to mortgages, executed without this state, of property not located within her boundaries. The question has never before been directly presented, at most it has never received an express adjudication by this court. The language of the statute does not in terms embrace a deed of mortgage executed abroad, and the preceding section of the same statute evidently refers to deeds for property located within this state, or which might be removed from one county to another by the party in possession, and would seem to exclude the idea that the legislature intended to embrace the case of deeds executed in any of the sister states. As the intention of the legislature is extremely doubtful, and the policy of applying the provisions of this statute to mortgages and trust deeds executed abroad, very questionable, we deem it safe to hold that the statute does not govern in these cases.
Conceding, then, that the rights of the plaintiff, as mortgagee, have not been affected by his neglect in not having his title-deed recorded, the question next presented is, whether the equity of redemption remaining in Marcum was subject to be distrained and sold under an attachment for the rent alleged to be due by him.
In the case of Thornhill v. Gilman et al., 4 S. & M. 153, it was held by this court that the statute law of this state has not changed the rule at common law, by which equities and rights to redeem were not subject to seizure and sale under an execution at law. That was a case where personal property had been conveyed by deed of trust, and the interest of the grantor *442 was held not to be a subject of sale under execution at law. In Goodwin v. Anderson, 5 Ib. 730, the interest of the vendee of real estate, who held bond for title, having paid part of the purchase-money, was holden not to be subject to seizure and sale under an execution at law. These decisions were made in reference to the provisions of the statute. Hutch. Dig. The first enacts, “that estates of every kind, holden or possessed in trust, shall be subject to like debts and charges of the persons to whose use, or to whose benefit they shall be respectively holden or possessed, as they would have been subject to, if those persons had owned the like interest in the things holden or possessed, as they own, or shall own, in the uses and trusts thereof.” The latter directs that, “ when the sheriff shall sell lands and tenements, it shall be his duty to make such deeds, as may be necessary to vest in the purchaser all the right, title, interest, claim and demand, of the debtor, or defendant either in law or equity.” In these provisions there is no express declaration that the equitable interests of defendants in execution shall be seized and sold under execution. It was upon this ground, and the obvious impolicy of subjecting to execution sale an equitable interest, as the vendee would take, subject to the trust, and be compelled to go into equity to get an account, or redeem prior incumbrances, which might be done in the first place with less cost and delay, that courts have held that equitable interests could not be reached by execution at law. But it is apprehended that the directions of the law, in regard to sales under a distress for rent in arrear, are more explicit, comprehensive and imperative. The statute, Hutch. Dig. 810, <§ 10, provides that “if such tenant or person, bound or liable for such arrears of rent, or any portion thereof, shall have an limited property or interest in such goods and chattels, (which were attached on the premises,) the same maybe distrained and sold for such interest as such tenant or 0Qther person or persons, bound or liable for the payment of such arrears of rent, or of any portion thereof, may have therein.”
The terms “limited property or interest,” necessarily embrace every description of right or title, whether at law or in equity, *443 which can be held to personal property. The direction, that stich limited property or interest might be distrained and sold for such interest as the tenant or other person bound for the rent in art-ear may have in the subject of the distress, is too explicit to admit of a construction which would exempt equitable rights from sale under an attachment for rent.
From this, it follows that the right of redemption, which existed in Marcum when the slave in controversy was distrained, was liable to be distrained and sold in satisfaction of the rent due by him; and the vendee at the sale would take his right or interest, subject to the legal title of the plaintiff. . The instruction was, therefore, proper, and the verdict correct.
Let the judgment be affirmed.